UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| EDWARD C. HANKS, | ) |
| | ) |
|         Plaintiff, | ) |
| v. | )    No.: 20-cv-3125-JBM |
| | ) |
| NED HUBBARD, et al., | ) |
| | ) |
|         Defendants. | ) |

## MERIT REVIEW –AMENDED COMPLAINT

Plaintiff, proceeding *pro se*, files an amended complaint alleging deliberate indifference to his serious medical needs and retaliation at the Western Illinois Correctional Center ("Western"). The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013)(citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations", it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In August 2018, Plaintiff was seen by Defendant Nurse Practitioner Smith apparently for routine follow-up of his hypertensions and diabetes. It appears that he told Defendant that he wanted "transitional lenses," whether eyeglass lenses or contact lenses is not clear. Defendant Smith referred him to the eye doctor and, on August 21, 2018, Plaintiff was seen by Defendant optometrist Dr. Hubbard. On that date, Defendant Hubbard applied Ketotifen Fumrate

Ophthalmic solution to Plaintiff's eyes.[1] Several days later Plaintiff's eye became swollen and clogged. On an unidentified date, a vein burst, Plaintiff lost his equilibrium, his face dropped, and his vision became blurry. On September 4, 2018, he was taken to a hospital where he "later" had a stroke.

After his return from the hospital, Plaintiff was seen by Defendant Smith for medication for the unidentified "pain and suffering Plaintiff endured." Plaintiff believes that these symptoms, and perhaps the stroke itself, were caused by the Ketotifen Fumrate Ophthalmic solution. Plaintiff flatly discounts NP Smith's explanation that the vein likely burst due to the blood thinners Plaintiff was taking for hypertension. Plaintiff claims that, although, he complained of muscle contractions, spasms, and stiffness, Defendant Smith, merely scheduled him to undergo an x-ray. Plaintiff alleges that he grieved the matter and was referred to Dr. Maddox for treatment of the muscle contractures, spasms and stiffness.

On an unidentified date, Plaintiff's unidentified pain became unbearable and he was seen by Defendant Nurse Practitioner Miller. During the encounter, Defendant Smith walked in and the two Nurse Practitioners conferred. Plaintiff states, confusingly, that they determined that his "complaints of a stroke, was unfounded; and further would not be documented as to the symptoms explained (tightening of chess, and muscles and limbs extremely stiff with the shorting of breathe)…"

Plaintiff indicates that his blood pressure was poorly controlled and, on September 25, 2018, was referred to Defendant Smith. Defendant Smith allegedly rescheduled and on identified x-ray and ordered a "mockery" 30 day medical lay-in. Plaintiff alleges that this was done to prevent Plaintiff from showing his disfiguring eye injury, not otherwise explained.

---

[1] Ketotifen is an antihistamine used to treat allergy and is available over-the-counter and by prescription. www.goodrx.com › Ketotifen.

Plaintiff once again re-pleads additional unrelated claims dismissed in the original merit review order. These are: that in April of the following year, he developed bumps on his forehead which were initially diagnosed as heat rash, but which were actually shingles; that Plaintiff was sent to an off-site hospital and, when he returned, was placed in quarantine in segregation without a blanket in 39-45-degree weather; that on May 13, 2019, Plaintiff developed seizure-like symptoms and had to be taken to an off-site hospital. Plaintiff also claims that he filed a grievance of this matter and that Defendant Nurses Given and Wolf retaliated by not providing him his pain medication.

## ANALYSIS

Once again, Plaintiff has pled a variety of unrelated claims, though specifically advised not to do so. *See* Merit Review Order [ECF 11 at 3]. "Here, Plaintiff alleges violations at three or more different periods of time, involving different Defendants and different injuries. These diverse claims do not arise out of a single transaction and do not involve common questions of fact. Fed.R.Civ.P. 20(a) (2)(A) and (B); *Davis v. Harding*, No. 12-cv-559, 2013 WL 6441027, at *2 (W.D. Wis. Dec. 9, 2013). Plaintiff cannot proceed on all of these claims in one global complaint and must choose the claim under which he wishes to proceed here. If he wishes to pursue the others, he must file them separately with responsibility for the attendant filing fees.

If Plaintiff wishes to proceed here as to the claim that he was injured due to the Ketotifen Fumrate Ophthalmic solution, he must allege sufficient medical information to support his conclusory allegation that he suffered stroke from the application of the ophthalmic ointment prescribed by Defendant Hubbard. Plaintiff must, additionally, plead allegations explaining what actions of Defendants Hubbard, Smith and Miller evidenced deliberate indifference and facts sufficient to reasonably infer a cause and effect connection between the application of the

Ketotifen Fumrate Ophthalmic solution and Plaintiff's injuries. *See McIntosh v. Wexford Health Sources, Inc.*, 2017 WL 1067782, at *5 (S.D.Ill. March 21, 2017) ("plaintiff must make allegations that associate specific defendants with specific claims, so the defendants are put on notice of the claims brought against them and so they can properly answer the complaint.") (Internal citation omitted). Plaintiff must also plead clearly as to whether he was hospitalized with a stroke and whether Defendants Smith and Miller denied that he had suffered a stroke or whether, perhaps, they discounted as stroke-related, those symptoms with which he presented that day to Defendant Miller.

Plaintiff has also named Defendant Wexford but asserts no claims against it. Merely naming a defendant in the caption is insufficient to state a claim. *Collins v. Kibort,* 143 F.3d 331, 334 (7th Cir. 1998). Wexford has potential liability under *Monell v. Dep't of Social Servs. Of City of New York*, 436 U.S. 658, 691-92 (1978), only where the alleged injury was the result of it policy or practice. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (to adequately plead *Monell* liability, allegations "must allow [the court] to draw the reasonable inference that the [defendant] established a policy or practice" which caused the injury.) Here, Plaintiff does not plead that he was injured due to a Wexford policy or practice.

As noted, the Court finds that Plaintiff's allegations too vague and devoid of sufficient context and detail to place any defendant on notice of the claims against him. The Federal Rules of Civil Procedure require that the plaintiff submit a short and plain statement showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). Here, Plaintiff has filed a prolix 61-page amended complaint which includes 54 pages of equally prolix exhibits. It is not the Court's job to search the record to determine the claims which Plaintiff intends to present. *See Vicom, Inc. v. Harbridge Merchant Servs., Inc.,* 20 F.3d 771, 775–76 (7th Cir.1994) (a prolix and confusing

complaint should be dismissed because it makes it difficult for the defendants to file a responsive pleading and for the court to conduct orderly litigation).

The Seventh Circuit has consistently noted that the essential function of a complaint under the civil rules...is to put the defendant on notice of the plaintiff's claim. *Ross Brothers Construction Co., Inc, v. International Steel Services, Inc*. 283 F.3d 867, 872 (7th Cir.2002), quoting *Davis v. Ruby Foods, Inc.,* 269 F.3d 818, 820 (7th Cir. 2001). While it is not necessary for a plaintiff to plead specific facts, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2007) (citing *Twombly,* 550 U.S. at 555) (observing that courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

Plaintiff will give be given a final opportunity to amend. If Plaintiff wishes to proceed here on the eye claim, he must plead some nexus between the administration of the ophthalmic solution and the stroke he apparently suffered. If Plaintiff does not wish to proceed on this claim, he makes choose one, but not all, of his other claims.

**IT IS THEREFORE ORDERED:**

Plaintiff's complaint is dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A. Plaintiff will have a final opportunity, 30 days, to replead his claims. The pleading is to be captioned Second Amended Complaint and is to include all of Plaintiff's claims without reference to a prior pleading but is not to contain misjoined claims. Failure to file a second amended complaint will result in the dismissal of this case, without prejudice, for failure to state a claim.

3/8/2021                                    s/Joe Billy McDade
ENTERED                          JOE BILLY McDADE
                                       UNITED STATES DISTRICT JUDGE